1               IN THE UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF ILLINOIS
2

3 UNITED STATES OF AMERICA,      )
                        )
4          Plaintiff,     )
                        )
5 v.                   )  No. 3:20-cr-30067-NJR-1
                        )  East St. Louis, Illinois
6 PAUL L. JANSEN,         )
                        )  ***SENTENCING PROCEEDINGS***
7         Defendant.     )

8

9         TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS
        BEFORE THE HONORABLE NANCY J. ROSENSTENGEL
          UNITED STATES CHIEF DISTRICT JUDGE
10

                 FEBRUARY 16, 2022
11

  APPEARANCES:
12

  FOR THE PLAINTIFF:    Angela Scott, Esq.
13                   Assistant United States Attorney
                   #9 Executive Drive, Suite 300
14                   Fairview Heights, IL  62208
                   618-628-3700
15                   angela.scott@usdoj.gov

16 FOR THE DEFENDANT:    Benedict Y. Song, Esq.
                   Chatham & Baricevic
17                   107 West Main Street
                   Belleville, IL  62220
18                   618-233-2200
                   Song.Benedict@gmail.com
19

  PROBATION OFFICER:    Craig Knabe
20

21         Stephanie Rennegarbe, RDR, CRR, CBC
             IL CSR #084-003232
22           750 Missouri Avenue
          East St. Louis, IL  62201
23             618-482-9226
       Stephanie_Rennegarbe@ilsd.uscourts.gov
24

     *Proceedings recorded by mechanical stenography;*
25   *transcript produced by computer-aided transcription*

```
 1                  (Proceedings began at 1:40 p.m.)
 2                  **********************
 3           COURTROOM DEPUTY:  The matter of United States of
 4    America v. Paul L. Jansen, case #20-cr-30067, is called for
 5    Sentencing.
 6           Will the parties please identify themselves for the
 7    record?
 8           MS. SCOTT:  Good afternoon, Your Honor.  The
 9    Government is ready, represented by Assistant U.S. Attorney
10    Angela Scott.
11           THE COURT:  Good afternoon, Ms. Scott.
12           MR. SONG:  Good afternoon, Your Honor.  Ben Song on
13    behalf of Paul Jansen.
14           THE COURT:  Good afternoon, Mr. Song and Mr. Jansen.
15           Now, Ms. Scott, I know there are victims in this
16    case.  Have the victims been notified of their right to attend
17    this hearing?
18           MS. SCOTT:  They have, Your Honor.
19           THE COURT:  And, do you have anyone who wishes to
20    make a statement?
21           MS. SCOTT:  No, Your Honor.
22           THE COURT:  All right.  So, I note the basis for
23    conviction in this case was a plea of guilty on October 27th
24    of 2021, without a plea agreement, but with a Stipulation of
25    Facts to two counts.
```

1              Count 1 charged Mr. Jansen with Attempted Enticement

2     of a Minor, in violation of 18 United States Code, Section

3     2422(b); Count 2 charged Enticement of a Minor in violation of

4     18 U.S.C., Section 2422(b).

5              Now, I always like to go over the documents I've

6     reviewed in preparation for the hearing to make sure there

7     isn't anything I have overlooked.

8              The Government filed sentencing memos at Docs 54 and

9     55 with a number of exhibits attached.  The Defendant filed a

10    sentencing memo at Document 57, with a number of letters in

11    support of Mr. Jansen attached to it.

12             Now, the presentence report was initially disclosed

13    on January 11th and revised on February 10th, just to make

14    minor revisions.  Now, with January 11th, the initial

15    disclosure, we are right at 35 days, which is required by the

16    Federal Rules of Criminal Procedure for Mr. Jansen to have

17    notice of the presentence report.

18             So, first, before I go any further, Ms. Scott, is

19    there anything I have overlooked?

20             MS. SCOTT:  No, Your Honor.

21             THE COURT:  Mr. Song, is there anything I have

22    overlooked?

23             MR. SONG:  No, Your Honor.

24             THE COURT:  All right.  Mr. Jansen, I want to ask

25    you, then, have you read and reviewed the Presentence

```
 1   Investigation Report with your lawyer?

 2          DEFT. JANSEN:  Yes, I have, Your Honor.

 3          THE COURT:  Have you had enough time to review it and

 4   discuss it with him?

 5          DEFT. JANSEN:  Yes, I have, Your Honor.

 6          THE COURT:  The rules say that you get 35 days, and I

 7   think today is the 35th day.  I want to make sure you had

 8   enough time to review it.

 9          DEFT. JANSEN:  Yes, I have.

10          THE COURT:  Is everything in the report true and

11   correct?

12          DEFT. JANSEN:  Yes, Your Honor.

13          THE COURT:  Have you also reviewed within the report

14   the Proposed Terms and Conditions of Supervised Release, along

15   with the justification and explanation of each one of those?

16          DEFT. JANSEN:  Yes, I have, Your Honor.

17          THE COURT:  All right.  So, there were no objections

18   filed.

19          Ms. Scott, does the Government move for the

20   additional acceptance of responsibility point?

21          MS. SCOTT:  I do, Your Honor.

22          THE COURT:  All right.  So, I will then adopt the

23   presentence report without objection.

24          Now, I next want to review the statutory sentencing

25   options and the advisory sentencing guidelines.
```

1          Both Counts 1 and 2 call for a minimum of 10 years of
2     imprisonment up to life.  Counts 1 and 2 call for a minimum of
3     five years of supervised release up to life.  He is ineligible
4     for probation under the statute.  The maximum fine on Counts 1
5     and 2 is $250,000; restitution is yet to be determined.  There
6     is a mandatory special assessment of $100 on each count.

7          Now, under the advisory sentencing guidelines we have
8     a total offense level of 36, Criminal History Category of I,
9     consisting of one point, which produces an advisory
10    imprisonment range of 188 to 235 months.  The guidelines call
11    for five years up to life of supervised release.  He is also
12    ineligible for probation under the guidelines.  The advisory
13    fine range is $40,000 to $250,000, and, again, the $200
14    special assessment.

15         Now, in addition to the special assessment, in 18
16    U.S.C. Section 3013, the Court shall assess an amount of
17    $5,000 of any non-indigent person or entity convicted of
18    sexual exploitation and other abuse of children, but Mr.
19    Jansen appears to be indigent, at least as to paying that
20    additional amount, and doesn't have the ability to pay that,
21    so I do intend to asses the standard $100 on each count.

22         Now, Ms. Scott, where are we on restitution at this
23    time?

24         MS. SCOTT:  Your Honor, so far no victim has asked
25    for restitution, so I don't think that's going to be an issue.

1          THE COURT:  Okay; all right.  Ms. Scott, do you have

2     any objection regarding what I have stated with respect to the

3     statute or the advisory guideline range?

4          MS. SCOTT:  No, Your Honor.

5          THE COURT:  Mr. Song, do you?

6          MR. SONG:  None, Your Honor.

7          THE COURT:  All right.  Well, then, after calculating

8     the guideline range, I have to consider the statutory factors

9     set out by Congress at 18 U.S.C. 3553(a), and ensure that I

10    impose a sentence that is sufficient, but not greater than

11    necessary to comply with the purposes of sentencing.  These

12    purposes, of course, include the need for the sentence imposed

13    to reflect the seriousness of the crime, to promote respect

14    for the law, and to provide just punishment for this offense.

15    The sentence should also deter criminal conduct, protect the

16    public from further crimes by Mr. Jansen, and promote

17    rehabilitation.

18         Now, in addition to the sentencing guidelines and

19    relevant policy statements, I must consider the nature and

20    circumstances of this offense, Mr. Jansen's history and

21    characteristics, strive to avoid unwarranted sentence

22    disparities among similarly-situated Defendants, and consider

23    the types of sentences available.

24         So, I have considered the information in the

25    Presentence Investigation Report and those factors.

 1          Counsel, I am now going to review what I see as the

 2    nature and circumstances of this offense and Mr. Jansen's

 3    history and characteristics, and then I will give you both an

 4    opportunity to make any additional argument, offer any

 5    additional factors, and give me your sentencing

 6    recommendation.

 7          So, according to the Stipulation of Facts, Mr. Jansen

 8    admitted having conversations over Facebook Messenger with a

 9    14-year-old female identified by the initials S.G., during

10    which he suggested sexual contact between them.  He met S.G.,

11    who was accompanied by her little brother, at a public park

12    and they went to Pizza Hut.  That's the conduct forming the

13    basis for Count 1.  No sexual conduct occurred at those

14    locations.

15          As to Count 2, he admitted having conversations over

16    Snapchat and Instagram with a different 14-year-old female

17    identified by the initials E.H., during which he suggested

18    sexual conduct between them.  He and E.H. had several secret

19    meetings in a high school parking lot during which sexual

20    activity occurred.

21          During the course of the investigation of this

22    offense, it was discovered that there numerous complaints to

23    several police agencies regarding a pattern of behavior

24    displayed by Jansen.  The reports detailed numerous complaints

25    made by females regarding Jansen harassing and soliciting them

1  via social media and in person.  There were reports of

2  interviews with numerous minor females ages 14 to 16 who were

3  contacted by Jansen on social media and enticed to meet for

4  sexual conduct.  In one of the cases Mr. Jansen went to the

5  house of a 14-year-old girl, hugged and kissed her and tried

6  to get her to leave in his vehicle, and another case involving

7  a 14-year-old girl he stated that he wanted to hang again and

8  the female replied, quote, "Yeah, you just want to fuck."

9        With regard to one of the minor females noted above,

10  separate from those in the instant case, Mr. Jansen was

11  charged in Clinton County Circuit Court in 2019 with indecent

12  solicitation of a child and grooming.  That case involved a

13  freshman in high school who was contacted by Jansen through

14  social media.  He asked her to send him pictures and told her

15  he would climb through her window so he could see her.  A

16  review of Jansen's messages to the girl revealed that he made

17  a number of statements to her that are set out in the

18  presentence report.  It is noted that these charges have since

19  been nolle prossed, based on the Defendant's federal

20  prosecution.  However, this illegal conduct is not related to

21  this offense.

22        Now, when authorities reviewed Mr. Jansen's Instagram

23  account, there were over 70 pages listing more than 4,000

24  Instagram accounts, primarily females, that Jansen followed.

25  On more than 150 occasions, Jansen attempted to initiate a

1    conversation with them by saying, quote, "I have a question."

2    The females told Jansen they were under 18, but he continued

3    to attempt to have conversations with them.

4         Additionally, he was banned from the campus and

5    sporting events of Kaskaskia College based upon his stalking

6    conduct involving one of the volleyball players.  In total,

7    ten of the 14 volleyball players had been contacted by Jansen

8    through social media.

9         So, under the guidelines it's a rather complicated

10   calculation.  We first take Count 1 as a group.  The base

11   offense level for that count is 28.  We add two levels for use

12   of a computer, which gets us to a total offense level of 30.

13        Then for Count 2, we also start with a base offense

14   level of 28.  Two levels are added for use of a computer, an

15   additional two levels for commission of a sex act or sexual

16   conduct, which gets us to a 32.  Obviously, the greater of

17   those two is 32, and then two points are added under Guideline

18   3D1.4, because of the number of units.  That gets us to a 34.

19        But, then we turn to Chapter 4.  Because he engaged

20   in a, quote, pattern of activity involving prohibited sexual

21   conduct, that being in Count 2, the guidelines direct that the

22   offense level shall be 5, plus the offense level determined

23   under Chapters 2 and 3, so you add 5 to 34, and that gets us

24   to 39.  And, then, because he did plead guilty and, of course,

25   avoided the victims having to testify at a trial, we get three

1    levels off, which gets us to the total offense level of 36.

2          Now, turning to Mr. Jansen's history and

3    characteristics, he is 26 years old.  He's a lifelong resident

4    of Clinton County, had a good childhood, remains close with

5    his parents.  He has never been married and does not have any

6    children.  He does report issues related to depression and

7    anxiety.  He has received some treatment, but is certainly in

8    need of more from what the Court can see.  He has a college

9    education; an Associate's Degree from Kaskaskia and a

10   Bachelor's in Administration from McKendree.  He has

11   employment history as a laborer.

12         Now, he has one prior conviction for a DUI that was

13   in 2019, for which he received two years of supervision, which

14   is the one criminal history point.

15         Now, he was arrested on March 26 of 2019, on a

16   related State charge.  He was released from custody on that

17   charge on April 11th of 2019.  He appeared here on a writ on

18   an unrelated state charge on July 16 of 2020, and was remanded

19   to custody.  He's been in constant custody since that time, so

20   that's about 19 months.  He's never been incarcerated,

21   notably, before he was arrested on State charges related to

22   this offense.

23         So, Ms. Scott, at this time you can make any

24   additional argument that you wish to make and give me your

25   sentencing recommendation.

1              MS. SCOTT:  Thank you, Your Honor.

2         Your Honor, you basically set out by argument when

3    you were going through the basics of the offense and the

4    history and characteristics of the Defendant.  I do want to

5    point out a couple of things.

6         I think it's important to note here that Mr. Jansen

7    not only preyed on E.H., her age made her vulnerable.  He also

8    knew she was especially vulnerable in this case.  When he was

9    being interviewed he asked, "Did she harm or kill herself,"

10   and he asked that because he knew -- he told the officer that

11   he knew that she had problems with anxiety and that she told

12   him she didn't have any friends, she had problems with people

13   bullying her at school.  And when the officer asked him,

14   "Well, do you think that made her more likely to be really

15   victimized by you, really, you know," he said, "Yeah, because

16   I was being nice to her, I guess."  And, I think that's

17   something that's really important, that he had this especially

18   vulnerable victim, and I think that's why maybe she was the

19   one victim out of the three that he was able to -- that we

20   know of that he was able to make physical contact with that

21   actually engaged in the sexual activity with him.  I don't

22   know.

23            But, I wanted to show Your Honor something.  This is

24   with respect to S.G.  And, I did not make this an exhibit to

25   my sentencing memorandum, and so I'm going to mark it as

1  Government's Exhibit J here for purposes of this hearing only,

2  Your Honor.  But, it's the -- it's the conversation with S.G.

3        And I just wanted to point out to Your Honor that

4  this conversation began 10/27/17, at 23:39.  He says -- He

5  says, "Hi."  She said, "Do I know you?"  And he started

6  talking, "No, blah, blah, blah, who are you," whatever.  And

7  it's at 23:58 -- 23:58, not only 20 minutes later he says,

8  "Really?  Well, we could do something tonight, I don't know."

9        And that's his pattern, Your Honor.  His pattern is

10  to meet these girls.  And then right after that it shows that

11  he knows her age, because he says to her, "That's the thing,

12  you are like 15."  So, he knows that she's 15 when he says

13  that to her.

14        And that's his pattern, as set out in Government's

15  Exhibit B, Your Honor, from the O'Fallon Police Department,

16  when it goes through all these examples.  When he's talking to

17  Lani Springer and she tells him she's 15, and he says, "We

18  should meet sometime."  His pattern.  It goes on and on.  I

19  just went through and just kind of highlighted a couple of

20  times where he's talking to adimfoutch07, right after she says

21  she's a freshman in high school, he asked her, "Should we hang

22  sometime?"  It's his pattern.

23        And when I was going through the chat messages, Your

24  Honor, there was just so many instances of that.  And, the

25  officer is right, it always began with "Hey," or "Can I ask

1       you a question," or something like that.

2               And, I wanted to show Your Honor a couple of the

3       chats from when the press release was issued.  And I thought

4       it was interesting that these girls were so disturbed by this

5       action of Mr. Jansen that they retained these chat messages

6       and they had these chat messages ready to go and the police

7       issued this press release.

8               So, here it's 10/21/2016 at 9:20 a.m., she said him,

9       "How old are you?"  And he said, "Well, that's what you want

10      to ask first, LOL?"  And, so, they go through the age and he

11      finds out that she's a sophomore.  And he says, "Oh, wow, I

12      thought you would be a little bit older."

13              So, we go to 8:16 p.m., the same day, Your Honor,

14      8:16.

15              THE COURT:  Which exhibit is this?

16              MS. SCOTT:  I'm sorry.  This is C.  This is C to the

17      sentencing memorandum.

18              THE COURT:  Just to be clear on the record.

19              MS. SCOTT:  I'm sorry about that.

20              He says, "Hey, are you doing anything tomorrow

21      night?"  This is at 10:16 p.m.  So, this is the very same

22      night, Your Honor.  "Are you doing anything tomorrow night?"

23      This is right after he identifies that she's a sophomore in

24      college.  This is the same night that he makes contact with

25      her.

```
 1              THE COURT:  Sophomore in high school.  You said
 2  college.
 3              MS. SCOTT:  I mean, he's in college; she's a
 4  sophomore in high school.
 5              THE COURT:  Okay.
 6              MS. SCOTT:  And then we have the conversation with
 7  M.G., where the mother reported it to the police department --
 8  this was Exhibit D to my sentencing memorandum -- where she
 9  says, "Hey, my parents would kill me if I came to hang out
10  with you," and he says, "Unless you want to meet secretly at
11  the park sometime.  I mean, I wouldn't do anything."
12              I am sorry.  My alarm is going off.  I have low blood
13  sugar.  I just need to turn it off.
14              THE COURT:  Are you okay?  Do you need to take a
15  break?
16              MS. SCOTT:  I think I'm okay, yes.  It's not so super
17  low that I need to stop.
18              And, then, finally, I just -- I know Your Honor has
19  read all of this already, so I don't want to take a lot of
20  time.  I just wanted to show one more example, Your Honor.
21              And this is G.B., and this was Government's Exhibit H
22  to the sentencing memorandum.  So, he starts the conversation
23  with her at 14:07:46.  She asked, "Did we go to school
24  together?"  He says, "No, we could be friends," and they go on
25  and on.  And, at 14:15 -- this is 11 minutes later -- he says,
```

1    "We could meet later."  And a minute later he says, "Should we

2    meet in Centralia somewhere?"  And this is after he knows --

3    She says, "I go to Centralia High School."  And she tells him

4    here before -- This is before he asked, so this is on page

5    two.  "I will be 17 in two months."  So, he knows she's 16,

6    right, because it's right here.  And then he says, "We could

7    meet later," 14 -- or 11 minutes after making contact with

8    her.  And, one minute later he said, "Should we meet in

9    Centralia somewhere?"  This is a 23-year-old man.  He tells

10   her, "I am 23."  A 23-year-old man asking a 16-year-old girl

11   11 minutes after making contact with her, "Can we meet in

12   Centralia?"

13          Your Honor, I think that this case -- I certainly

14   think that Mr. Jansen should get credit for the fact that he

15   did accept responsibility for his actions, and his actions did

16   keep the victims from having to testify at a trial.  So, I

17   certainly think he should get some credit for that and that's

18   why we are asking for a low-end guideline sentence.

19          But, Your Honor, I think if you look at the

20   information in the PSR and you look at the information

21   attached to the sentencing memorandum, you see that Mr. Jansen

22   has such a history of being -- of predatory behavior.  I mean,

23   being banned from Kaskaskia College because of your behavior

24   towards female athletes there, the police reports that were

25   discovered during the investigation of the other minors that

1    he had encountered, the Facebook posts from the lady who said,

2    "Hey, if you get a text from Jansen, don't -- don't answer it,

3    because he will harass you, he will bother you."

4              So, Your Honor, I think that that just says that a

5    sentence of 188 months is warranted here.  It's necessary to

6    protect, to reflect the seriousness of the offense, promote

7    respect for the law, provide just punishment for the offense.

8    I think most important -- most important is to protect the

9    public from further crimes of the Defendant.  I think that is

10   one of the most important factors here.  I think a lifetime

11   term of supervised release -- and I don't very -- I don't ask

12   for that very much.  I think a lifetime term of supervised

13   release is necessary, because I think Mr. Jansen needs to be

14   monitored.  I mean, this is a man who was on bond in Clinton

15   County and told to not have contact with any minors, and he

16   couldn't even do that and had his bond revoked in Clinton

17   County, because he made contact with a minor.  He can't stop

18   himself.  And, I think a lifetime term of supervised release

19   is necessary to monitor him and to protect the public from

20   further offenses by him.

21             So, Your Honor, we would ask for 188 months

22   imprisonment, a lifetime term of supervised release, $200

23   special assessment, and then a fine within the Court's

24   discretion.

25             Thank you, Your Honor.

1          THE COURT:  All right.  Let me just ask, Ms. Scott, I

2   was a little confused by your argument in your sentencing

3   memorandum about the bond being revoked.  Because if I look at

4   Exhibit K, that is like a modification petition that was

5   submitted.

6          MS. SCOTT:  Yeah, but it was actually revoked.  Yeah,

7   he -- I don't know why it's phrased as a modify, because he

8   filed the modification, but it was modified to get it revoked.

9   It was actually revoked.

10          THE COURT:  You are saying it was revoked on the

11   related State charge?

12          MS. SCOTT:  Yes, it was revoked on the charge that

13   was related to S.M., yes, --

14          THE COURT:  Okay.

15          MS. SCOTT:  -- because of T.K., because of the

16   contact with T.K.

17          THE COURT:  Okay; all right.

18          MS. SCOTT:  Yeah, I'm sorry.

19          THE COURT:  All right.  Thank you.

20          Mr. Song?

21          MR. SONG:  Thank you, Your Honor.

22          THE COURT:  And, Mr. Song, do you have any witnesses

23   or anyone who wishes to make a statement?

24          MR. SONG:  No statements, Your Honor.  We have Jeff

25   Jansen, Paul Jansen's father, as well as Mr. Kalmer, who is an

1    employee -- or employer of Paul Jansen in the past who's

2    present in open court.

3              THE COURT:  Okay.  All right.

4              MR. SONG:  Your Honor, we believe that 120 months in

5    the Department -- I'm sorry, in the Bureau of Prisons with

6    five years of supervised release -- Am I allowed to take --

7              THE COURT:  You may at the podium, yes.

8              MR. SONG:  Thank you.

9              -- and five years of supervised release to be an

10   adequate punishment that would be sufficient, but not greater

11   than necessary in this circumstance.

12             I want to start off, Your Honor, with the punitive

13   nature of the mandatory minimum in the case before Your Honor.

14   120 months, ten years of a person's life is a very significant

15   period of time.  We are not here, Your Honor, asking for

16   probation.  When Paul Jansen pled guilty to the instant

17   offense, Your Honor, he knew that the mandatory minimum on his

18   case was 120 months, he knew that the minimum amount of time

19   that he would have to spend in custody for these offenses to

20   be 120 months.  I believe the legislature correctly put that

21   in place as a punitive measure for these specific types of

22   offenses, Your Honor.

23             Moving on to the history and characteristics of the

24   Defendant, I believe Mr. Jansen to be a little bit different

25   than most Defendants in front of Your Honor.  The Government

1    came out and stated, yes, he came -- and the Court came out

2    and stated that he came from a supportive family and

3    community.  He does have prior work experience and he also has

4    a letter from Mr. Kalmer, again present in open court, for

5    ongoing employment if and when he is ever released from the

6    Bureau of Prisons.  Mr. Jansen also graduated from the

7    university.  He first got a scholarship from Kaskaskia College

8    for cross country and then went on to get a degree from

9    McKendree University.

10          And I think what the Court just indicated about Mr.

11   Jansen needing further treatment is absolutely spot on, Your

12   Honor.  Mr. Jansen, as it's reported in the presentence

13   report, had previously not only received treatment, mental

14   health and psychological treatment, but had the

15   self-recognition that he needed treatment, specifically in the

16   PSR mentioning that he sought treatment with someone named

17   Karla Ragsdale, who stated that, quote, Paul was very open and

18   actively worked in session, and she indicated the Defendant

19   was beginning to understand boundaries.

20          What Mr. Jansen has pled guilty to, what the

21   Government has alleged him to have done is absolutely

22   abhorrent, Your Honor.  There's absolutely no excuse for it,

23   there's no justification for it, there's really no explanation

24   for it.  What we are asking for is to recognize that Mr.

25   Jansen has an opportunity because of his specific

1    circumstances to rehabilitate himself.  And he has shown a

2    past willingness to get treatment, as well as a present and

3    future willingness to receive treatment, as well.

4         Also in our sentencing memorandum is an indication

5    about his family and specifically his mom's health condition,

6    that she has a heart condition, she had to get a device

7    installed in her heart and that we just really don't know how

8    much time she's going to have.  So, after speaking with her

9    and the entire family, as well my client himself, one of the

10   reasons why he wants to be released is to make sure that he

11   does see his mom again outside of the Bureau of Prisons.

12        There's also a letter from Deacon Glenn Netemeyer,

13   just giving a little bit of color about the type of person

14   that Paul was in the community.

15        I would like to talk a little bit about the

16   collateral consequences, Your Honor, that was in our

17   sentencing memorandum.  Again, lifetime registration.  That is

18   something where he will have to be accountable, regardless of

19   the amount of time that he serves in the Bureau of Prisons,

20   regardless of the mandatory supervised release period of time,

21   Mr. Jansen will have to go his entire life registering as a

22   sex offender.  He will not be able to go certain places,

23   because of his status he will not be able to live and get

24   employment at certain places because of his status as a sex

25   offender.  Those are all collateral consequences.  I

1   understand that does not go into the guidelines

2   specifications, but I wanted to bring that to the Court's

3   attention with regards to that actually being a punitive

4   measure, especially given the type of community support, the

5   type of family support that he has and that he's not going to

6   be able to spend that time also with his family, because,

7   again, he has a mandatory minimum of 120 months in the

8   Department of Corrections.

9          Addressing very briefly the Government's assertion of

10  statements given by Mr. Jansen, those are police interrogation

11  tactics, Your Honor.  My client readily admitted right away to

12  the allegations.  There was no hiding any information.  He

13  didn't try to manipulate anybody at any point in any period of

14  time.  He admitted to his wrongdoing right away, he pled

15  guilty, and so I believe that being forthright -- Again, I

16  understand that he has acceptance-of-responsibility reductions

17  but I just wanted to bring that to the Court's attention with

18  regards to that matter.

19         Your Honor, I understand that the Court and the

20  Government -- they do not get to speak and interact with my

21  client the way that I do, they don't get to interact and speak

22  to my client's family the way that I do, and so there is a

23  perspective that I have of Mr. Jansen that obviously will

24  never be able to be experienced by the Court or by the

25  Government.  But, from what I have personally seen, Your

1   Honor, Paul Jansen has finally understood the ramifications of

2   his actions, Your Honor.

3        There is a very long list of things that he has done

4   wrong in his life, Your Honor.  There's no way to take those

5   things back.  What we are asking here today, Your Honor, is

6   that a person be given one last opportunity to become a

7   productive member of society, for a person to be able to go

8   back and reintegrate himself and to go back to a support and a

9   community that will make sure that he stays on the right path,

10  to allow him the opportunity to rehabilitate himself, and we

11  believe in order to do that 120 months in the Bureau of

12  Prisons, plus five years of mandatory supervised release, to

13  be the best way back to rehabilitating himself and the best

14  road to make sure that he becomes a productive member of

15  society, Your Honor.  Thank you.

16        THE COURT:  All right.  Thank you, Mr. Song.

17        Well, Mr. Jansen, you can remain seated there as long

18  as you speak into the microphone.  You have a right to make a

19  statement, say anything you wish to say before sentence is

20  imposed.  You don't have to say anything, I won't hold it

21  against you if you don't want to say anything, but if you do

22  now is the time.

23        DEFT. JANSEN:  I just want to say, Your Honor, that I

24  am very sorry for what I did.  There are no words to explain

25  what happened.  I put myself and my family in a very bad

1    situation.  I am going to do everything in my power to become

2    a better person so I can be with my family again and to

3    complete any treatment that is necessary.

4            Thank you, Your Honor.

5            THE COURT:  All right.  Well, thank you, Mr. Jansen.

6            Well, certainly I know this has put your family

7    through a lot.  I often say that we don't know -- It's not

8    just you have to serve the time, but it is very hard on your

9    family, and I feel for them for that.  But, you are very

10   fortunate that you have good support, that you have people

11   here supporting you today, because often there is nobody back

12   there, which usually just suggests to me that people who care

13   about the person have simply given up because they have been

14   through so much.  So, you are lucky to have that.  You are

15   lucky that you had a good childhood.  99 percent of the

16   Defendants who come before me just had a horrific childhood.

17           So, I am mindful of all the arguments here from the

18   Government in aggravation and from the Defendant in

19   mitigation.  And, of course, my job is to weigh those and to

20   determine what will reflect the seriousness of the offense,

21   promote respect for the law, and provide just punishment.

22           Seriousness of the offense.  This is a very serious

23   offense in that it's not isolated.  It's not one or even two

24   incidents.  There's definitely a pattern and numerous young

25   women who were contacted.  I think most of the aggravating

1    facts here are captured by the guideline calculations.

2         What will promote respect for the law -- again, I

3    think that is a strong need -- and provide just punishment for

4    the offense.

5         Now, I agree with Mr. Song that a mandatory minimum

6    of ten years is a significant period of time.  And often I

7    find that a mandatory minimum, particularly in child

8    pornography cases, is sufficient but not greater than

9    necessary.  But, simply stated, in this -- This is not a

10   mandatory minimum case in my mind in light of all the

11   aggravating factors.

12        Now, there are, you know, additional mitigating

13   factors.  First of all, the greatest mitigating factor here is

14   that he did accept responsibility and avoided the victims

15   having to go through a trial.  He did work with law

16   enforcement right away and not try to hide anything, and so

17   that is mitigating.  The fact that the victims were spared a

18   trial and he accepted responsibility is, of course, reflected

19   in the guidelines.

20        He has an employment history and an offer of work,

21   which is good.  He's educated, and that's good.  You know, one

22   of the factors, of course, is also to provide Mr. Jansen with

23   needed education or vocational training, medical care, or

24   other corrective treatment.  Certainly the Bureau of Prisons

25   has the ability to provide the treatment that he needs and

1    Probation will, as well, once he is released and serves a term

2    of supervised release.

3         Now, it is sad to hear about his mother's heart

4    condition, and certainly I -- it doesn't bring me any pleasure

5    to keep a son away from his mother, but, again, I have to look

6    at the seriousness of the offense, determine a sentence that

7    will promote respect for the law, and provide just punishment.

8         Of course, deterrence is another factor.  For

9    specific deterrence, I think that any sentence likely will

10   serve a significant amount of significant deterrence, meaning

11   to deter Mr. Jansen from committing this type of crime.  Also,

12   as I said earlier, he has no previous term of imprisonment, so

13   the 19 months he's spent in a county jail, to be followed by

14   the time spent in the Bureau of Prisons, hopefully will

15   achieve specific deterrence, as well as the term of supervised

16   release.

17        For general deterrence, to the extent sometimes I'm

18   doubtful that there is such a thing, in this case I think that

19   is a factor that the public sees this type of crime taken

20   seriously and punished.  And, of course, I agree with the

21   Government that one of the greatest factors here is to protect

22   the public from further crimes, again in light of the very

23   serious nature and the pattern of the conduct in this case.

24        And, ultimately my job is to avoid unwarranted

25   sentence disparities among similarly-situated Defendants, and

1    the best way for me to do that is to impose a guideline

2    sentence.  That being said, I am going to impose the low end,

3    the 188 months, again because Mr. Jansen is a young man.  This

4    term of imprisonment is significant and I don't think that

5    something higher than that is appropriate.  Again, he avoided

6    the victims having to go through a trial and certainly that is

7    reason to impose the low end.  And, there are, of course, a

8    number of collateral consequences that Mr. Song pointed out.

9    He will have to register for life.

10          And, Mr. Jansen, I will just caution you, lest I

11   forget to do it later, that's a big thing, because people are

12   charged here all the time with Failure to Register, and that's

13   a new offense for which you can be subject to an additional

14   term of imprisonment.  Of course, the felony conviction is

15   always a big collateral consequence, because that will follow

16   you for your life.

17          So, as far as supervised release, I am going to

18   impose a term of 15 years.  I know the guidelines call for

19   five years to life.  The Government has asked for life.  But,

20   in light of Mr. Jansen's age at the time he's released, I

21   think at this time 15 years should be appropriate.  A term of

22   supervised release will monitor his use of controlled

23   substances, which really doesn't seem to be a big factor here;

24   make sure he doesn't have any contact with the victims in this

25   case, he will be in early adulthood by then; address any

```
 1    treatment that he needs; work with his employment needs; and
 2    overall reduce recidivism, protect the public, and afford
 3    specific deterrence.
 4            So, 15 years is a long time, but, again, if my
 5    calculations are correct, Mr. Jansen will be around 40 when
 6    he's released and this will have him supervised to a point
 7    where hopefully the issues that are raised by this case will
 8    no longer be a factor.
 9            Now, this is a guideline sentence, that range exceeds
10    24 months, and I have stated all the reasons why I think the
11    low-end guideline sentence is sufficient, but not greater than
12    necessary.
13            Here I will talk about the conditions of supervision
14    in a moment.
15            So, pursuant to the Sentencing Reform Act of 1984, it
16    is the judgment of the Court that the Defendant, Paul L.
17    Jansen, is committed to the custody of the Bureau of Prisons
18    to be imprisoned for a term of 188 months on each count to be
19    served concurrently.
20            Now, Mr. Jansen, you will have to pay to the United
21    States a special assessment of $100 per count, for a total of
22    $200.  That is payable through the Clerk of the United States
23    District Court.  Because you appear to be indigent, I will not
24    assess the additional $5,000 special assessment pursuant to 18
25    U.S.C. 3014.  There being no requests for restitution, none
```

1    will be ordered at this time.

2         I am going to further order you pay the United States

3    a total fine of $400; that's $200 on each count.  That is due

4    immediately.  You will need to notify the United States

5    Attorney for this district within 30 days of any change of

6    name, residence, or mailing address until the penalties have

7    been paid in full.

8         Now, you don't have the ability to pay a fine within

9    the guideline range, so I'm not going to impose that, but I

10   think some fine is appropriate and can be paid through the

11   Inmate Financial Responsibility Program.

12        Having assessed your ability to pay, payment of the

13   total criminal monetary penalties shall be paid in equal

14   monthly installments of $25 or ten percent of your net monthly

15   income, whichever is greater.  If you haven't paid off the

16   financial penalties by the time you are released, it will

17   become a condition of your supervised release.

18        Now, upon release from imprisonment you will be

19   placed on supervised release for a term of 15 years on each of

20   Counts 1 and 2, to run concurrently.  Within 72 hours of

21   release from custody of the Bureau of Prisons, you shall

22   report in person to the United States Probation Office in the

23   district where you are released.

24        Now, while on supervision you will be required to

25   comply with conditions of supervision as ordered by the Court.

1          Now, Mr. Jansen, at the beginning of the hearing I

2    asked if you had reviewed those conditions that are in the

3    presentence report, and you told me that you had.  Do you

4    remember that?

5          DEFT. JANSEN:  Yes, Your Honor.

6          THE COURT:  Now, there are mandatory conditions.

7    Just what it sounds like, they have to be imposed.  There are

8    administrative conditions.  Those are things that help

9    Probation to sentence you.  And then there are special

10   conditions.  Those are things that Probation recommends just

11   for you.

12         So, in paragraph 128, there's a requirement that you

13   refrain from excessive use of alcohol, and that's because of

14   your pattern of regular consumption of alcohol, your DUI

15   conviction.  Do you have any question about that condition?

16         DEFT. JANSEN:  No, Your Honor.

17         THE COURT:  Paragraph 129 is what we call a substance

18   abuse treatment provision.  That will allow you to -- That

19   will allow Probation to get you any substance abuse treatment

20   that you need.  Do you have any question about that?

21         DEFT. JANSEN:  No, Your Honor.

22         THE COURT:  Similarly, paragraph 130 will require you

23   to get a mental health evaluation and allow Probation to get

24   you any treatment that you need.  Do you have any question

25   about that?

1          DEFT. JANSEN:  No, Your Honor.

2          THE COURT:  Paragraph 131, 132, 133 all deal with the

3    financial penalties.  I expect you will have those paid off

4    before you are released, but if you don't, it will become a

5    condition of your supervision.  Do you have any question about

6    those?

7          DEFT. JANSEN:  No, Your Honor.

8          THE COURT:  And then paragraph 134 will require you

9    to not knowingly have any contact with S.G. or E.H., as the

10   victims in Counts 1 and 2 of the indictment.  Do you have any

11   question about that?

12         DEFT. JANSEN:  No, Your Honor.

13         THE COURT:  Paragraph 135 is what we call standard

14   search condition.  That will allow the Probation Office to

15   search your house, your car, your person and whatever to make

16   sure you are in compliance.  Do you have any question about

17   that?

18         DEFT. JANSEN:  No, Your Honor.

19         THE COURT:  Paragraph 136 will require you to

20   participate in an approved sexual offender treatment program

21   and, if necessary, submit an approved sexual predator

22   evaluation and follow the rules of any program.  Do you have

23   any question about that?

24         DEFT. JANSEN:  No, Your Honor.

25         THE COURT:  Again, you will have to register, so

1   that's a very important thing.

2          Paragraph 137 will prohibit you from activity on

3   social media sites, internet chat rooms or internet forums

4   unless approved by the Court or the Probation Officer.  That's

5   again because of the social media that was utilized in this

6   case.  Do you have any question about that?

7          DEFT. JANSEN:  No, Your Honor.

8          THE COURT:  Paragraph 138 will require that you not

9   have any contact with persons under the age of 18 of the same

10  gender as the victims of the offense or any prior offenses.

11  Do you have any question about that?

12         DEFT. JANSEN:  No, Your Honor.

13         THE COURT:  And, paragraph 139 states you shall not

14  be affiliated with or employed in any capacity by a business,

15  organization and/or volunteer activity that causes you to come

16  in contact with persons under the age of 18 of the same gender

17  as the victims unless approved by the Court or Probation

18  Officer.  Do you have any question about those?

19         DEFT. JANSEN:  No, Your Honor.

20         THE COURT:  All right.  So, the Court of Appeals says

21  I should read each one of these conditions to you, go over

22  them in open court.  Obviously they are not going to take

23  effect for a while.  That's why we started including them in

24  the presentence report, so you can review them before the

25  hearing.  And, so, I do have a waiver here in front of me that

1    would waive the formal reading.  I'm going to hold it up.

2    It's two pages.  If you can't see it, I'm happy to pass it

3    down.  But, I just want to confirm that that's your signature

4    on the line that says *Signature of Defendant*.

5           DEFT. JANSEN:  Yeah, it is my signature.

6           THE COURT:  All right.  And you read this document

7    and discussed it with Mr. Song before you signed it?

8           DEFT. JANSEN:  Yes, I did, Your Honor.

9           THE COURT:  All right.  So, I will find that the

10   conditions proposed in the presentence report are appropriate

11   given there was no objection to them and for the

12   justifications set out in the report.

13          Now, these will continue to apply, Mr. Jansen.  You

14   can, of course, seek modification of them or seek

15   clarification of them once they become effective, but until

16   then they will apply once you are released.  Do you understand

17   that?

18          DEFT. JANSEN:  Yes, I do, Your Honor.

19          THE COURT:  All right.  Now, I will further find that

20   you are unable to pay the cost of incarceration or

21   supervision, and those costs are waived.

22          Now, Ms. Scott, do you request any further

23   explanation of the reasons for my sentence?

24          MS. SCOTT:  I do not, Your Honor.

25          THE COURT:  Mr. Song, do you?

1          MR. SONG:  No, Your Honor.

2          THE COURT:  Mr. Song, are you satisfied that I

3    addressed your main arguments in mitigation?

4          MR. SONG:  Yes, Your Honor.

5          THE COURT:  All right.  Then the sentence will be

6    imposed as stated.

7          Now, Mr. Jansen, you have a right to appeal your

8    conviction if you believe that your guilty plea was somehow

9    unlawful or involuntary or if there is some other fundamental

10   defect in the proceedings that was not waived by your guilty

11   plea.  In addition, you have a statutory right to appeal your

12   sentence under certain circumstances, particularly if you

13   think the sentence is contrary to law.  With few exceptions,

14   any notice of appeal must be filed within 14 days of judgment

15   being entered in your case or within 14 days of the Government

16   filing a notice of appeal.

17         I expect we will enter judgment either later today or

18   tomorrow at the latest.  If you are unable to afford the

19   services of a lawyer to handle your appeal, a lawyer will be

20   appointed for you.  Do you understand this?

21         DEFT. JANSEN:  Yes, Your Honor.

22         THE COURT:  And, if you need a transcript of the

23   record in the case a Court Reporter has taken down everything

24   that's been said at every hearing you have had.  If you need

25   that for an appeal and can't afford it you can get it for

```
 1    free.  Do you understand that?

 2            DEFT. JANSEN:  Yes, Your Honor.

 3            THE COURT:  Mr. Knabe, anything I have overlooked?

 4            PROBATION OFFICER:  No, Your Honor, thank you.

 5            THE COURT:  Ms. Scott, anything else?

 6            MS. SCOTT:  No, Your Honor.

 7            THE COURT:  Mr. Song, anything else at this time, or

 8    requests for placement recommendation?

 9            MR. SONG:  Not at this time, Your Honor.

10            THE COURT:  All right.  There being nothing further

11    before the Court, the Defendant is remanded to the custody of

12    the United States Marshals Service and the Court's in recess.

13            Good luck to you, Mr. Jansen.

14            COURT SECURITY OFFICER:  All rise.

15            (Proceedings adjourned at 2:28)

16

17

18

19

20

21

22

23

24

25
```

```
1                    REPORTER'S CERTIFICATE

2                   *   *   *   *   *   *   *

3      I, Stephanie K. Rennegarbe, RDR, CRC, Official Court

4   Reporter for the U.S. District Court, Southern District of

5   Illinois, do hereby certify that I reported with mechanical

6   stenography the proceedings contained in pages 1-35; and that

7   the same is a full, true, correct and complete transcript from

8   the record of proceedings in the above-entitled matter.

9

10  /S/ Stephanie K. Rennegarbe,              08/05/2022
    IL CSR, RDR, CRC
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```